John A. Walker, Jr., of Walker & Walker, P.C., Knoxville, for defendant-appellant.

David A. Lufkin, Knoxville, for plaintiff-appellee; Finkelstein, Kern, Steinberg & Cunningham, of counsel.

**HALCO FINANCIAL SERVICES, INC., Plaintiff–Appellee,**

v.

**William E. FOSTER, Defendant–Appellant.**

Court of Appeals of Tennessee, Eastern Section.

Feb. 10, 1989.

Permission to Appeal Denied by Supreme Court May 1, 1989.

OPINION

FRANKS, Judge.

In this action for debt, the chancellor gave judgment for $29,623,75, which included $3,500.00 as attorney's fees. Defendant has appealed.

The chancellor filed findings of fact and conclusions of law and we adopt as pertinent:

> In 1980, the defendant needed some money to pay his tax liability.
>
> Contact was made with Charles Alexander, an agent of the plaintiff. Mr. Alexander advised the defendant that all amounts paid by the defendant on the

transaction to be hereinafter discussed would be tax deductible.[1]

As a result of their negotiations and discussions the parties entered into a rather interesting financial arrangement. . . .

The transaction on or about June 4, 1980, is summarized as follows: The defendant sold the items shown [Appendix 1 to this Opinion] to the plaintiff for $25,000.00. The parties in turn entered into a master lease agreement, which was not signed by the plaintiff but purports to lease the items of personal property to the defendant for the consideration of 81 monthly payments of $750.00 each. The defendant and his wife executed a master lease guaranty agreement, guaranteeing the payments of the amount due under the master lease agreement. The defendant also executed a purchase option, which permitted the defendant to purchase the items of personal property at "the fair market value of the equipment at the termination date of the lease as determined by a mutually agreed upon independent appraiser . . .". A UCC–1 was recorded in Tennessee which says: "The equipment described herein is leased by secured party to debtor. Secured party files this statement for notice purposes only because property is leased to and in possession of debtor".

The defendant made 33 payments of $750.00, beginning in June of 1980 through July, 1983, at which time he stopped.

As of June 4, 1980, the formula interest rate was 18% in Tennessee. The effective annual interest note involving the transaction was 31.62% per annum.

The chancellor concluded the parties agreed to be bound by a Missouri law and in applying Missouri law observed:

1. The defendant was not able to deduct for tax purposes the payments made to the plaintiff.

2. The property, with the exception of some medical books, was, in fact, used for personal, household and agricultural purposes.

3. Equity looks beneath the veil of form, and discerns the real features of the transaction. . . . Snell's Pr. Eq., 41. Equity considers

[T]he defendant signed the master lease agreement which said:

LESSEE WARRANTS THAT THE PROPERTY COVERED HEREIN IS FOR USE IN A COMMERCIAL BUSINESS ENTERPRISE AND NOT FOR PERSONAL, HOUSEHOLD OR AGRICULTURAL PURPOSES.[2]

The court assuming the transaction between the parties was a financial arrangement, concluded the loan was not usurious on the basis of Missouri statutes:

Vernon's Annotated Missouri Statutes (V.A.M.S.) § 408.030 provides in relevant part:

"1. Parties may agree, in writing, to a rate of interest not exceeding ten percent per annum on money due or to become due upon any contract . . . except that, when the 'market rate' exceeds ten percent per annum, parties may agree, in writing, to a rate of interest not exceeding the 'market rate'."

V.A.M.S. § 408.035 provides an exception:

"Notwithstanding the provisions of section 408.030, it is lawful for the parties to agree in writing to any rate of interest in connection with any: . . . (2) Business loan of five thousand dollars or more . . ."

The chancellor concluded the statutory business loan exception was applicable to this transaction because of the quoted warranty.

■ It was settled early in this jurisdiction that equity looks not to the outward form but to the inward substance of every transaction. *Bond v. Jackson*, 4 Tenn. 189 (1817); Inman, *Gibson's Suits in Chancery*, § 19 (6th ed., 1982).[3] Likewise, Mis-

the real and the substantial, and allows no rule of evidence at law, no fiction of Courts of law, and no acts or subterfuges of parties, to tie its hands, or shackle its feet, or dim its sight, in searching for the real truth of the transaction under investigation. Courts of Equity act upon the circumstances and justice of the particular case, whereas Courts of law

souri courts look to the substance of the transaction under scrutiny rather than to its form. *Julian v. Burrus*, 600 S.W.2d 133 (Mo.App.1980).

■ This transaction, in substance, is a loan, with its terms carefully tailored by the plaintiff to avoid the application of the usury statute. The applicable rule is well-stated in 47 C.J.S., *Interest & Usury*, § 130:

In general, agreements purporting to be leases will be examined closely to be certain that they are not being used as a cloak for usurious charges, and transactions which, on their face, are agreements for leasing or hiring property have been held in many instances to be mere makeshifts to cover usurious loans. Thus, where the lender, instead of making a direct loan secured by mortgage on the property of the borrower, requires of him an absolute conveyance of the property intended as security for the sum advanced, giving the borrower the privilege of repurchasing at the price paid, and also leasing to him the property at a rental in excess of the legal rate of interest on the sum advanced under the guise of purchase money, the transaction is prima facie usurious.

The issue thus becomes whether the loan is, in fact, a "business loan" within the meaning of Missouri law without regard to form of the document.

The revised statutes of the State of Missouri, Title XXVI, Trade and Commerce, Chapter 408, *Legal Tender and Interest*, defines a business loan:

408.015. Definitions.

rather regard precedents, forms, rules of procedure and the strict letter of the law.

As used in sections 408.020 to 408.562:

.    .    .    .    .

(2) "Business loan" shall mean a loan to an individual or a group of individuals, the proceeds of which are to be used in a business or for the purpose of acquiring an interest in a business. The term shall also include a loan to a trust, estate, cooperative, association, or limited or general partnership.

The loan under consideration does not fall within the terms of a business loan under the Missouri statute. Accordingly, the exception for business loans contained in V.A.M.S., § 408.035 does not apply.

The interest rate exacted is usurious and V.A.M.S., § 408.070 provides:

In actions for the enforcement of liens upon personal property subjected to a security agreement to secure indebtedness, or to maintain or secure possession of property so subjected to a security agreement, or in any other case when the validity of such lien is drawn into question, proof upon the trial that the party holding or claiming to hold the lien has received or exacted usurious interest for the indebtedness shall render any security agreement of personal property, or any lien whatsoever thereon given to secure the indebtedness invalid and illegal.

It appears defendant has not paid any interest but has repaid the amount of money actually received from plaintiff. It is meet, therefore, that the judgment of the trial court be reversed and the cause dismissed with cost of the appeal assessed to appellee.

GODDARD and ANDERSON, JJ., concur.

*Gibson's Suits in Chancery*, § 43 at p. 60, (4th ed., 1937).

## APPENDIX 1

Additional security to be attached to and made a part of that certain security agreement between Unico Financial Services and Dr. William E. Foster (Borrower.).

**LIVING ROOM**
- Sofa
- Love seat
- Occasional chairs
- Desk
- Coffee table
- Television
- Piano
- Stereo system

**DINING ROOM**
- Dining room table
- Chairs
- Hutch/China cabinet

**KITCHEN**
- Range
- Microwave
- Refrigerator
- Freezer
- Dishwasher
- Compactor
- Dinette
- Chairs

**UTILITY ROOM**
- Washer
- Dryer
- Sewing Machine

**SHOP**
- Table saw
- Radial arm saw
- Welder
- Compressor

**BEDROOM**
- Bed
- Chest of drawers
- Dresser
- Night stands

**BEDROOM**
- Bed
- Chest of drawers
- Dresser
- Night stands

**BEDROOM**
- Bed
- Chest of drawers
- Dresser
- Night stands

**BEDROOM**
- Bed
- Chest of drawers
- Dresser
- Night stands

**DEN/OFFICE**
- Desk
- Bookcases
- Stereo
- Television
- Library
- Piano/Organ
- Musical Instruments

**GARAGE**
- Freezer
- Power mower
- Rototiller

VALUE OF ABOVE furniture — $40,000.00

X _____ Signature

XX _____ Signature